* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission modifies in part, and affirms in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On September 7, 1988, the date of the injury by accident giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On said occasion, the Employee-Employer relationship existed between the Plaintiff and the Employer.
3. On said occasion, the Employer was insured by North Carolina Farm Bureau Mutual Insurance Company.
4. The Plaintiff's workers' compensation rate is $327.01 for which he is currently receiving ongoing temporary total disability benefits pursuant to the Opinion and Award affirmed by the North Carolina Court of Appeals on August 29, 2000, holding that Plaintiff was disabled and also ruling that it was futile for him to engage in further vocational placement activities.
5. Industrial Commission Form 19 (dated September 14, 1988); Form 21 (dated October 28, 1988); Form 26 (undated, payment for 5% permanent partial disability to the back); Form 26 (undated, for additional temporary total disability beginning May 5, 1991 for various weeks, executed by Plaintiff and submitted to Defendants but never submitted to Industrial Commission for approval); Opinion and Award by Deputy Commissioner William Haigh dated April 2, 1992, affirmed by the Full Commission on January 28, 1993, and affirmed by the North Carolina Court of Appeals on November 2, 1993; Opinion and Award by Deputy Commission William Haigh dated January 4, 1994 and affirmed by the Full Commission on August 24, 1994; Opinion and Award by Deputy Commissioner William Haigh dated January 30, 1998, affirmed by the Full Commission by Opinion and Award filed February 18, 1999, and affirmed by North Carolina Court of Appeals by Opinion filed August 29, 2000; Opinion and Award of Deputy Commissioner Kim Ledford filed August 14, 2000; and Opinion and Award by Deputy Commissioner Morgan Chapman filed October 24, 2002 are entered into evidence by stipulation of the parties.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the competent evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. The hearing of this matter came on before the Deputy Commissioner upon Defendants' July 16, 2003 Form 33 request for hearing, alleging that "Plaintiff is working and is not disabled as a result of his injury," Defendants' request for attorney fees from Plaintiff for "fraud and misrepresentation," and upon Plaintiff's request for hearing, alleging that Defendants have engaged in bad faith.
2. After the filing of the parties' requests for hearing in this matter, Plaintiff engaged in discovery including interrogatories and requests for production of documents. An Order was issued by Chief Deputy Commissioner Stephen Gheen dated November 4, 2003, compelling Defendants to respond to Plaintiff's interrogatories and assessing a $1,000.00 attorney fee. In a subsequent Amended Order, Chief Deputy Commissioner Gheen held the issue of attorney fees in abeyance. Subsequently, Defendants filed responses to Plaintiff's interrogatories in which they alleged that Plaintiff was working and earning wages, concealing such activities, and utilizing aliases, false social security numbers, names and multiple dates of birth, and addresses. Plaintiff thereafter filed an additional Motion to Compel that came before Deputy Commissioner Adrian Phillips. By Order of January 29, 2004, Deputy Commissioner Phillips compelled Defendants to fully respond to Plaintiff's interrogatories and assessed $1,000.00 in attorney fees. Defendants appealed the Order of Deputy Commissioner Phillips by the filing of a subsequent Form 33 on February 10, 2003.
3. At the hearing before Deputy Commissioner Gheen, Defendants presented evidence through the testimony of Roger Stevens, a private investigator. He was retained to conduct surveillance on Plaintiff on several occasions. On October 13 or 14, 2000, he was asked to follow Plaintiff home to establish where he lived. He observed that Plaintiff's residence had a two-bay garage on the premises and that there were numerous cars on the premises, some that appeared to be "for sale." He testified that he also saw a car hauler, but he did not include this observation in his report. It is unclear when he provided information about the car hauler to Defendants, but he testified that as a result of such information, he was asked to conduct a second surveillance in July 2002. Mr. Stevens did not take any photographs of Plaintiff's premises in October 2000. Mr. Stevens' report was not introduced into evidence.
4. On or about July 5, 2002, and again on July 19, 2002, Defendants retained Mr. Stevens to perform additional surveillance on the Plaintiff. Mr. Stevens visited Plaintiff's property on July 19, 2002, and took photographs. He observed on Plaintiff's property, multiple residences, a two-bay garage, and multiple vehicles that appeared to be for sale. On July 24, 2002, Mr. Stevens reported to Defendant-Carrier that it appeared Plaintiff was operating an auto repair garage, selling vehicles and operating an automobile restoration business.
5. Mr. Stevens also reported that he had personally spoken with Plaintiff and that Plaintiff had offered to sell him a camper and a truck. He testified, however, that he did not know who owned the camper and truck and made no effort to determine ownership. Mr. Stevens could not establish the amount of time, if any, Plaintiff was allegedly spending on operating a car lot, operating a mechanic's garage, or operating an auto restoration business. Specifically, to each of these inquiries Mr. Stevens responded, "I do not know . . . I don't know . . . I don't know . . . No idea." Likewise Mr. Stevens testified he was not aware of, nor did he observe Plaintiff performing any physical activities in operating any of these alleged businesses.
6. Mr. Stevens also testified that he reported to Defendant-Carrier that Plaintiff had a "pre-disposition to repair and sell vehicles" based solely on his observation that Plaintiff had a two-bay garage next to his house; but that he had never seen the garage doors up, nor had he viewed any repair of vehicles. He testified, "Actually, I think the pre-disposition were [sic] the line of cars with prices on them." Mr. Stevens admitted that he failed to verify ownership of the automobiles with the Department of Motor Vehicles (DMV) even though he had an account with DMV that allowed him to verify vehicle ownership and had contacted DMV to verify that Plaintiff still possessed a current commercial drivers' license (CDL).
7. Mr. Stevens also did not attempt to confirm with the Swain County tax officials whether Plaintiff had a business license. He testified, "I am assuming, it [verification] did not occur to me." He had, however, contacted the county tax department to confirm Plaintiff's ownership of his residence.
8. Janet DeSpirito, claims supervisor for Defendant-Carrier was also called as a witness by Defendants. She testified, "I think the majority of reliance [for alleging Plaintiff was working and guilty of fraud] was on Mr. Stevens' [private investigation] reports." At the time the Form 33 was filed, Ms. DeSpirito testified that Defendants were aware that any allegations of aliases, false social security numbers, and multiple addresses and dates of birth were unverified. Defendants had retained Master Trace Investigations, to search records and databases. Based on their reports, Defendants made these allegations even though Master Trace Investigations specifically in their written reports stated that the information they provided was unverified and should be verified by independent means. Ms. DeSpirito further testified that at the time the Form 33 was filed, there was no evidence that Plaintiff had earned any wages or compensation. When further asked by the Court for the basis for their Form 33, Ms. DeSpirito testified that, "It is I believe that he is selling these [cars] . . . I don't know anything for sure. I don't have any facts."
9. At the time Defendants filed their July 16, 2003 request for hearing, Defendants alleged that Plaintiff was working based upon the following observations by their private investigator: (a) Plaintiff had a two-bay garage on his property; (b) Plaintiff had on his property a car hauler with "JL Antique Auto's" printed on the side; (c) Plaintiff had six regular transport plates registered in his name at DMV; (d) there were approximately ten cars on or near Plaintiff's property, some with "for sale" signs in the window; (e) the private investigator's representation that Plaintiff gave him an asking price for a truck and camper; (f) the private investigator's representation that Plaintiff had stated to him that he had done mechanical work on the truck and had cleaned and installed a refrigerator in the camper; and (g) the private investigator's report that Plaintiff had a commercial insurance policy.
10. Defendant's allegation that Plaintiff committed fraud and misrepresentation was based upon Master Trace Investigation reports suggesting Plaintiff used false social security numbers, aliases and multiple dates of birth and addresses, and Plaintiff's subsequent indication on an Industrial Commission Form 90 that he was not working. However, the Master Trace reports contained the following disclaimer: "Please be advised the information obtained is unverified and may not contain all available information on the subject. All information should be verified by independent means." A report from Accurint dated July 8, 2002 also contained a similar disclaimer. Defendant did not verify the accuracy of these reports and filed a Form 33 request for hearing based on this unverified information."
11. On September 17, 2003, Plaintiff filed his initial discovery which requested that Defendants: (1) identify each and every fact which Defendants contend support their allegations that Plaintiff is working, and (2) identify each and every fact which Defendants contend support their allegation that Plaintiff has engaged in fraud or misrepresentation; and further requesting that Defendants produce evidence supporting these allegations. Defendants failed to timely respond to this discovery and on October 30, 2003, Plaintiff filed a Motion to Compel, which was granted by Chief Deputy Commissioner Gheen in his order filed November 4, 2003.
12. Defendants filed responses to Plaintiff's discovery on December 1, 2003, which reported the evidence that they contended supported their allegations of fraud and misrepresentation was "use of multiple aliases names, social security numbers, dates of birth and addresses at numerous hospitals and pharmacies for unknown purposes" and "working at the jobs in the manner described herein, and willfully concealing those activities and earnings for purposes of obtaining workers compensation benefits he was not lawfully entitled to receive."
13. As the matter was scheduled for hearing before Deputy Commissioner Phillips, Plaintiff filed a subsequent Motion to Compel on December 11, 2003, based on Defendants' previous waiver of their objections and failure to produce the alleged hearsay evidence, which they intended to offer in their allegations of fraud and misrepresentation against Plaintiff.
By letter of counsel dated December 22, 2003, defense counsel responded to Plaintiff's motion stating:
 In response to Plaintiff's assertions concerning Interrogatory No. 1 . . . supporting our contention Plaintiff is working . . . We also have hearsay accounts of Plaintiff's work activities, which at this point [we] cannot verify but which we have every reason to believe are true.
 With respect to Plaintiff's assertions concerning Interrogatory No. 2, the "fraud and misrepresentation". . . additional investigation reflects that Plaintiff is likely using multiple aliases, Social Security numbers, dates of birth and addresses as well. At this point the additional information concerning aliases, etc is hearsay, although again we have every reason to believe that information is correct.
14. Mr. Stevens testified that between his investigations in July and November 2002 and Defendants' July 16, 2003 filing of the Form 33 request for hearing, he would have had time to follow up on his recommendations of additional efforts to verify ownership of the vehicles, possession of active business licenses, verification of the transporter tags, and verification of car titles transferred by plaintiff. However, Defendant-Carrier failed to request any such additional verification. He testified that further investigation should have been done.
15. Ms. DeSpirito also testified that additional steps to verify the allegations of operating a car lot and repair business would have been reasonable, but Defendant-Carrier failed to do so. She further admitted that such unverified information should not have been used against the Plaintiff.
16. Defendants also called as witnesses Jason Lowery, Lisa Lowery and Plaintiff Jerry Lowery.
17. Jason Lowery, testified that he lived with his father, Jerry Lowery, and operated a car repair shop on the property. He had a registered business license with the Swain County tax office and the North Carolina Department of Revenue. Jason Lowery further testified that he had been earning money repairing cars for several years.
18. Jason Lowery also testified that he permitted family members, friends and neighbors who lived in less visible and less frequently-traveled areas to park their personal automobiles on his parents' property to sell them to the public. The Lowery residence is located on the main highway between Bryson City and Cherokee, North Carolina and is highly visible to the public. Jason Lowery identified at the hearing each vehicle depicted in the surveillance photographs, as well as the owners of all such vehicles. Plaintiff did not own any of the vehicles depicted in Defendants' photographs.
19. During the periods of time in which surveillance was being conducted in this matter, Jason Lowery was doing mechanical work on his parents' property. By 2003, he obtained a business license to operate "Jason's Auto" on his parents' property. Such business license is a public record and is readily available to private investigators and Defendants for verification. However, no such verification was undertaken.
20. Plaintiff's wife, Lisa Lowery, and Jason Lowery have engaged in the hobby of showing their collectible cars at various car shows since at least 1998, for which they have been awarded certificates and trophies.
21. Lisa Lowery testified that she and Jason were the owners of "JL Antique Auto's" and offered documented exhibits to prove the car hauler and transporter tags were used to transport collectible show cars, which she and Jason owned, to various car shows. The awards were offered as exhibits at the hearing.
22. The testimony of Jason Lowery and Lisa Lowery is found to be credible.
23. Plaintiff had registered transport tags through the DMV during the years in question. Such transport tags, pursuant to N.C. Gen. Stat. §20-79.2, were legally used to transport the collectible cars to and from car shows.
24. Jason Lowery owned the car hauler and titled it in Plaintiff's name for insurance purposes. When Defendants or their witnesses were asked if they attempted to find out if the car hauler was being used to transport automobiles for others, they stated that they had not investigated to determine if it had been, but assumed that Plaintiff was using the car hauler to haul automobiles for pay because it was seen parked on his property.
25. Defendants contend the testimony of Mr. Stevens, that Plaintiff claimed to have made repairs to a truck, cleaned a camper, and installed a refrigerator were sufficient to support their at hearing, claim that Plaintiff had wage earning capacity; and that Mr. Stevens' observations of cars for sale, a two-bay garage and a car hauler on Plaintiff's premises were proof that Plaintiff was engaged in a business activity. Based on the evidence presented, Defendants have failed to establish that Plaintiff is working, or that he has wage earning capacity. A one-time offer to sell a truck and camper is not proof that Plaintiff is working. Having a two-bay garage on his property may be some proof that some repair work may be occurring on the property, but it does not prove Plaintiff is the person doing the repair work. Even if Plaintiff represented that he installed a new alternator and wiring on a vehicle and that he cleaned and installed a new refrigerator in a camper, these representations alone do not prove Plaintiff physically performed the work himself, or the time and circumstances under which the work was done. Defendants have not proven that Plaintiff's response on the Form 90 report were false.
26. Defendants have failed to prove there are jobs in the competitive marketplace that Plaintiff could obtain or that Plaintiff has had a change in condition under N.C. Gen. Stat. § 97-47.
27. Had Defendants taken the opportunity to depose Jason Lowery, Lisa Lowery, or Jerry Lowery or conduct a reasonable investigation, or otherwise engage in discovery, they could have easily obtained and would have been provided with the information available through public records, including photographs of the show cars, award certificates, photographs of trophies awarded at various car shows, and copies of Mr. Lowery's personal insurance policies indicating he did not maintain commercial insurance. Defendants failed to reasonably request such information and did not attempt to do so until the hearing of this matter.
28. No reasonable verification of the allegations of Mr. Stevens or other investigators was undertaken to determine if Plaintiff was engaged in employment, or had engaged in fraud or misrepresentation. It was clear from the evidence, Defendants never had sufficient evidence that Plaintiff had been working and earning wages in any form and they had insufficient basis for requesting a hearing on the grounds alleged.
29. Defendants had no credible grounds to support their allegation that Plaintiff used false social security numbers, multiple addresses and dates of birth, and aliases to conceal earnings or income. Therefore, filing a Form 33 request for hearing and prosecuting these claims up to the time of hearing before Deputy Commissioner Glenn constituted stubborn, unfounded litigiousness.
30. As to Plaintiff's contention that Defendants engaged in bad faith, Plaintiff's strongest evidence on this issue is Defendants' request for attorney fees from Plaintiff for fraud and misrepresentation based on their known-to-be unverified allegations that Plaintiff used false social security numbers, aliases, and multiple addresses and dates of birth to gain a benefit for which he was not entitled. Defendant's conduct constitutes stubborn, unfounded litigiousness and bad faith. Defense counsel's statement that defendants' believed the allegations to be true, even though they were unverified does not establish a good faith basis for Defendant's prosecution of this claim.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Defendants have failed to prove that Plaintiff was working and earning wages or capable of obtaining employment in the competitive job market at any relevant time herein. Therefore, Plaintiff is entitled to continuing compensation for total disability until further Order of the Commission. N.C. Gen. Stat. § 97-29.
2. Defendants have failed to prove that Plaintiff committed fraud, misrepresentation or that his Form 90 responses were untruthful. N.C. Gen. Stat. § 97-17.
3. There was a reasonable basis for Deputy Commissioner Phillips and Gheen's findings that Defendants were in contempt for their failure to fully respond to Plaintiff's discovery and sanctions in the total amount of $1000.00 are reasonable.
4. Defendants have not proven that Plaintiff has a change in condition under N.C. Gen. Stat. § 97-47.
5. Defendants' request for hearing on the grounds that Plaintiff was working and therefore no longer disabled constituted stubborn, unfounded litigiousness because they were aware that they had not conducted a reasonable investigation considering the procedural posture and the circumstances of this case. N.C. Gen. Stat. § 97-84.
6. Defendants request for hearing and attorney fees based on allegations that Plaintiff engaged in fraud and misrepresentation and their prosecution of this matter constituted stubborn, unfounded litigiousness and bad faith because, at the time of the filing of the Form 33 in July of 2003, Defendants possessed no evidence to give them a reasonable basis to believe that Plaintiff was using false social security numbers, aliases, and multiple dates of birth and addresses. N.C. Gen. Stat. § 97-88.1.
7. Plaintiff has filed claim for sanctions or damages on the ground that defendant's conduct in prosecuting a claim for attorney's fees against Plaintiff based upon unverified allegations that Plaintiff used false social security numbers, alias and multiple dates of birth and addresses constitutes bad faith. The Industrial Commission has exclusive jurisdiction over workers compensation claims and all related issues. Johnson v. First Union, 131 N.C. App. 142, 143 (1998). Numerous appellate cases discuss bad faith as a component of stubborn, unfounded litigiousness under N.C. Gen. Stat. § 97-88.1. This statute provides an adequate remedy for plaintiff's bad faith claim in this case. Plaintiff is entitled to attorney fees and all costs associated with defending Defendant's claims due to Defendant's stubborn, unfounded litigiousness. N.C. Gen. Stat. § 97-88.1
8. Defendants, having appealed this matter to the Full Commission, should be taxed the costs of this hearing including attorney fees. N.C. Gen. Stat. § 97-88.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants claims are DENIED.
2. Plaintiff's claim for bad faith is encompassed in the determination herein that Defendants engaged in stubborn, unfounded litigiousness pursuant to N.C. Gen. Stat. § 97-88.1 Therefore the proper remedy is provided for under N.C. Gen. Stat. § 97-88.1.
3. Defendants shall pay to Plaintiff's counsel, attorney fees as a part of costs for their unreasonable prosecution their claims, which constituted stubborn, unfounded litigiousness. Defendants shall also pay Plaintiff travel expenses for attending the hearing and any other reasonable costs associated with defending these claims.
4. Defendants shall pay an additional $1,000.00 in sanctions to Plaintiff's counsel as assessed by Deputy Commissioner Phillips, which shall also include the hearing before Chief Deputy Commissioner Gheen for their unreasonable failure to respond to Plaintiff's discovery requests.
5. Plaintiff's claim for N.C. Gen. Stat. § 97-88 attorney fees for defense of this claim before the Full Commission is GRANTED.
6. Defendants shall pay the costs of this matter.
 * * * * * * * * * * * ORDER
All prior final orders of the Commission shall remain in effect. Plaintiff's counsel shall submit to the Industrial Commission an itemized statement of time expended and his customary hourly rate dating back to Defendants filing of the Form 33 on July 16, 2003 through the hearing before the Full Commission in order for the Full Commission to award an attorney fee under N.C. Gen. Stat. §§ 97-88.1 and 97-88. Plaintiff's counsel shall also submit to the Industrial Commission an itemized statement of Plaintiff's travel and any other reasonable costs associated with defending these claims.
This the ____ day of October 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING IN A SEPARATE OPINION:
 S/_________________ BUCK LATTIMORE CHAIRMAN